IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JESSICA P. ROSA,                          *

    Plaintiff,                        *

vs.                                        *

                            CASE NO. 4:20-cv-201(CDL)

CHRISTINE WORMUTH, Secretary,              *
Department of the Army,
                                           *

    Defendants.                        *
_____
                                           *

O R D E R

    Jessica Rosa is a civilian employee of the United States Army. She claims that the Army discriminated against her because of her race (Hispanic), color (white), and national origin (Chilean), in violation of the federal-sector provision of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16. First, Rosa claims that the Army assigned her extra duties without compensating her for them. Second, she contends that she was not selected for a promotion. The Army moved for summary judgment on both claims. As discussed below, the motion (ECF No. 31) is granted.

SUMMARY JUDGMENT STANDARD

    Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

In accordance with the Court's local rules, the Army submitted a statement of undisputed material facts with its summary judgment motion. *See* M.D. Ga. R. 56 (requiring a statement of material facts that is supported by the record). Rosa, who is represented by counsel, filed a response to the statement of material facts, but the responses are all "Admitted" or "Denied" without any citation to the record, although Rosa does cite the facts portion of her response brief for a few "Denied in Part" responses. The Army's fact statement is thus deemed admitted pursuant to Local Rule 56, and the Court reviewed the Army's citations to the record to determine whether a genuine fact dispute exists. *See id*. ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."). The Court also reviewed

Rosa's citations to the record in the "Statement of Material Facts" portion of her brief.

Inexplicably, the Army did not include in its separate statement of material facts many facts that it relies on in its summary judgment motion. These facts include information about an anonymous letter regarding the promotion Rosa sought, the decision to change the required qualifications for the position Rosa sought, and facts about the qualifications of the person who received the promotion Rosa sought. In the discussion section of its brief, the Army discussed these facts and pointed to specific citations in the record to support them. Rosa responded to the arguments with her own record citations. The Court is thus satisfied that Rosa had an adequate opportunity to respond to the additional facts even though they were not in the Army's separate statement of material facts.

FACTUAL BACKGROUND

Rosa is Hispanic, and she identifies her color as white and her national origin as Chilean. Rosa is a civilian employee of the Army at the Western Hemisphere Institute for Security Cooperation ("WHINSEC") at Fort Benning, Georgia. WHINSEC provides training for soldiers from countries in the Western Hemisphere, and the training is done in Spanish. Most of WHINSEC's employees are Hispanic and speak both English and Spanish. The administrative actions for WHINSEC, though, are in

English.   Def.'s Mot. for Summ. Ex. 2, Fact-Finding Conference Tr. 162:1-2, ECF No. 31-4.

In 2015 and 2016, Rosa worked as a human resource assistant at WHINSEC.   For several days in November 2015, Rosa was assigned duties consistent with a workforce management support specialist job because Angela Ramos, the person who held the support specialist position, "had an emergency, so she had to leave."  *Id.* at 46:4-14.   While Ramos was on leave, she helped Rosa over the phone and came to the office a few times to guide Rosa.  *Id.* at 46:16-47:6.   Ramos returned to work in mid-January 2016, and Rosa's supervisor, WHINSEC Director of Human Resources David Munyon, asked Ramos to teach Rosa "the whole job just in case."  *Id.* at 47:7-11.   Ramos retired in April 2016.  *Id.* at 47:18-21.   After Ramos retired, Rosa performed the duties of the workforce management support specialist until November 2016, and other employees took over some of Rosa's regular human resource assistant job duties.  *Id.* at 48:2-19.

Rosa did not receive an SF-50 notice of personnel action form stating that she was temporarily reassigned or promoted to the workforce management support specialist position.  *Id.* at 50:18-51:3.   Munyon did issue her a 120-day "management-directed detail" on June 14, 2016, which detailed her to perform the workforce management support specialist duties for a maximum of 120 days.  *Id.* at 98:1-8.   Rosa performed the support specialist

duties for more than 120 days, and she was paid at the rate for her regular job, human resource assistant, a GS-6 level. Ramos was paid at the higher GS-9 level for the workforce management support specialist position.

The Army posted a vacancy announcement for the workforce management support specialist position in April 2016. The position had a bilingual English/Spanish requirement. Rosa applied for the position, but the vacancy was canceled before it was filled. *Id.* at 31:18-32:13. When the workforce management support specialist position was first opened, WHINSEC Operation Chief Colonel Keith Anthony received an anonymous letter complaining that the position had been unfairly promised to Rosa, that Munyon showed favoritism toward Rosa, that Munyon's favoritism would make it difficult to make an "ethical selection for the most qualified applicant," and that the process was unfair to other employees who were "denied promotions" and "not given the same opportunity." Def.'s Mot. for Summ. J. Ex. 11, Anonymous Letter to Col. Anthony (Apr. 20, 2016), ECF No. 31-13. After he received the letter, Anthony ordered his Command Judge Advocate to do a legal review "to mitigate any type of favoritism." Fact-Finding Conference Tr. 198:22-199:6.

The Command Judge Advocate, Captain Edwin Caban, Jr., conducted the legal review and sent Colonel Anthony a memorandum. Caban "identified issues that need to be addressed

in order to avoid creating a perception of favoritism and to
foster a process of transparency during [the] hiring action" for
the workforce management support specialist position.   Def.'s
Mot. for Summ. J. Ex. 12, Mem. from E. Caban to WHINSEC
Commandant 1 (May 3, 2016), ECF No. 31-14.   Caban's "major
concern" was the bilingual requirement, which Caban concluded
"limits technically proficient Non-Spanish speaking candidates
from applying" even though there was not "sufficient
justification for this limitation."   *Id.* at 2.   Caban concluded
that "the primary duties of the position involve a technically
proficient advisor on workforce management activities" who would
serve as a liaison between WHINSEC and other organizations, thus
requiring "constant written and oral communications in English."
*Id.*   Caban acknowledged that "a candidate with vast technical
skills and Spanish proficiency" could be selected, but "the
language should not be a reason for disqualifying a technically
proficient candidate."   *Id.*

In reaching this conclusion, Caban consulted Rosa's
supervisor, Munyon, who believed that the workforce management
support specialist position must be bilingual because the
workforce management support specialist sometimes made travel
arrangements for individuals who spoke Spanish.   Caban, however,
concluded that a different office—not the workforce management
support specialist—was responsible for such "administrative

issues." *Id.* Then, Cabal met with Munyon and WHINSEC's chief of staff to discuss the issue, and Munyon "was unable to present an adequate justification to limit the scope of possible candidates to only Spanish-Speaking." *Id.* Finally, Caban concluded that "the circumstances tend to support the perception" that Munyon "promised the position to Mrs. Rosa creating a pre-selected hiring action without a competitive process." *Id.* at 3.

As a result of Caban's report, the bilingual requirement was removed from the workforce management support specialist position, and the Army posted a new vacancy announcement for the position in August 2016. Rosa applied for the position and was selected for an interview. The selection panel included Colonel Anthony, Lieutenant Colonel Luis Arzuaga, Major Guillermo Rojas, Jr., Captain Jimmyvan Cogles, Staff Sergeant Alfonso Carrasco, and Captain Adriana Karmann. Staff Sergeant Danhay Bailey and JAG Captain Chadwick White also attended the panel interviews.[1] Munyon was disqualified from being a voting member on the selection board "in order to avoid a perception of partiality or undue influence." *Id.*

---

[1] Every member of the selection panel was Hispanic. Most of them identify as white, one identifies as brown, and one said his color depends on the sun. The selection panel members identify their national origins as American, Puerto Rican, Mexican, Colombian, and Venezuelan. Captain White, who attended the interviews but was not a member of the selection panel, is not Hispanic.

Rosa asserts that during the interview, White asked questions even though his role as the JAG officer was to observe. According to Rosa, White asked if she "knew everyone in the Civilian Personnel" and commented, "you don't know anyone." Fact-Finding Conference Tr. 38:22-39:10. Rosa also contends that White made direct discriminatory remarks about her accent before, during, and after her interview. In support of this assertion, Rosa points to her own testimony that White was "slandering [her] to the board members during the interview before and after," but she gave no specifics of how White "slandered" her. *Id.* at 107:14-19. Rosa also submitted an audio recording of a conversation which she says is between White and Kaumann, and she asserts that "White can be heard mocking [her] accent in a derogatory manner." Pl.'s Decl. ¶ 5, ECF No. 41-1. Rosa did not point to any evidence of when the recording was made. The Court listened to the recording. It is not clear from the recording that Rosa is the subject of the conversation or that anyone is mocking someone's accent. Thus, the recording does not establish White made discriminatory remarks about Rosa during the interview process.

The selection panel recommended Martha Battles, an African American woman who does not speak Spanish, for the workforce management support specialist position. The panel stated that Battles, whose previous position was at the Civilian Personnel

8

Advisory Center, was an "HR professional with over ten years of experience" who "[d]isplays a desire to do a job right and motivate the team to work towards a common goal." Def.'s Mot. for Summ. J. Ex. 13, Mem. for WHINSEC Commandant (Oct. 24, 2016), ECF No. 31-15. The panel noted that Battles "could be the catalyst of positive change required to enhance systems and procedures in the HR section," that she had "a professional network that will benefit the institute when external support is needed," and that she had "in-depth knowledge of all systems the position will manage and is current on upcoming changes to the systems." *Id.* The panel also observed that Battles "display[ed] self-control and ability to handle stress well," and it stated that she was "[b]y far the best applicant [the panel] interviewed." *Id.* The panel believed that Battles would use "all her talents, competencies, and gifts to take" WHINSEC's human resources department "to the next level." *Id.* at 2.

Rosa was the panel's second choice. The panel noted that Rosa had "great knowledge on HR systems, procedures, and operations to include upcoming changes and updates required for the position" and that she had "experience and knowledge on the Institute['s] overall battle rhythm, making her an applicant who doesn't need training to start immediately." *Id.* at 1. But the panel found that Rosa "displayed a lack of confidence and initiative" that "could be overcome with the right mentorship

and professional development" but which "affects the needs of the Institute for changes on the procedures and systems currently in place that would make the Department of Human Resources . . . a better section." *Id.*

After receiving the panel's recommendation, Colonel Anthony selected Battles to be the workforce management support specialist. Rosa exhausted her administrative remedies, then filed this action asserting Title VII claims based on the extra job duties with no additional pay and the denied promotion.

DISCUSSION

The federal-sector provision of Title VII requires that personnel actions by federal agencies like the Army "be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). To establish a claim under this statute, a plaintiff must prove that her protected characteristic is the "but-for cause of *differential treatment*," even if the protected characteristic is not "a but-for cause of *the ultimate decision*." *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1205 (11th Cir. 2021) (quoting *Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020)). Thus, the familiar *McDonnell Douglas* framework does not apply in cases under § 2000e-16 because "even when there are non-pretextual reasons for an adverse employment decision . . . the presence of those reasons doesn't cancel out the presence, and the taint, of

discriminatory considerations." *Id.* at 1204. But a federal-sector Title VII plaintiff must still prove that her protected characteristic was the "but-for cause of *differential treatment.*" *Id.* at 1205 (quoting *Wilkie*, 140 S. Ct. at 1174).

## I.   Rosa's Claim Based on Extra Job Duties

Rosa argues that the decision not to pay her additional compensation while she was detailed to the workforce management support specialist position was tainted by race, color, and national origin discrimination because "she was treated differently from every other employee" who was detailed on an assignment that exceeded 120 days. Pl.'s Resp. to Def.'s Mot. for Summ. J. 10, ECF No. 37. But Rosa did not point to *any evidence* on this point. Rosa summarily asserts, without any citation to the record, that this is a jury issue because she "has identified comparators." *Id.* She did not, however, explain who those comparators are. Rosa has the burden to point to *some evidence* to create a genuine fact dispute on the issue of whether the Army's decision not to pay her additional compensation was tainted by discrimination. She did not point to evidence of a single person outside her protected class who served a management-directed detail of more than 120 days and received additional compensation. She also did not point to any other evidence that gives rise to an inference of discrimination on this issue. Accordingly, Rosa did not create a genuine fact

dispute on whether her protected characteristics were the but-for cause of differential treatment. *Cf. Malone v. U.S. Att'y Gen.*, 858 F. App'x 296, 301 (11th Cir. 2021) (per curiam) (affirming the district court's grant of summary judgment on a race discrimination claim because the plaintiff did not show that the employment decision "was in some way tainted by race discrimination"). The Army is thus entitled to summary judgment on this claim.

## II. Rosa's Claim Based on the Denied Promotion

Rosa also asserts a claim based on the Army's decision to promote Battles instead of her. Rosa contends that the promotion decision was tainted by discrimination in two ways. First, she argues that White had a discriminatory animus toward her and that he unduly influenced the selection panel. Rosa is correct that under a "cat's paw" theory of liability, an employer may be liable for an adverse employment action if the employee shows that the decisionmaker followed the recommendation of a biased party who held a discriminatory animus toward the employee. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). But Rosa did not point to any evidence to establish that White was biased against her because of any protected characteristic, that White made a specific recommendation regarding the promotion decision, or that the hiring panel adopted some recommendation White made without

independently considering the relevant issues. Thus, the present record contains no hint of a cat's paw arrangement.

Second, Rosa argues that even if her cat's paw theory fails, it is obvious that WHINSEC "removed the bilingual requirement to ensure that other candidates with lessor [sic] qualifications could qualify" and "as [a] means to select an inferior candidate for the position." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4. In support of this argument, Rosa cites her own testimony: she believes that WHINSEC removed the bilingual requirement "to make sure that they get someone that they feel that they qualify. You know, they -- like they --they had better connections with." Fact-Finding Conference Tr. 41:5-11. Rosa, though, did not point to any evidence that the requirement was removed so the Army could select someone who did not possess the legitimate qualifications for the job.

Rosa also suggests that the removal of the bilingual requirement gives rise to an inference that WHINSEC preselected Battles for the position because of her race, color, and national origin. It does not. Rosa pointed to nothing in the record that suggests anyone at WHINSEC even knew who Battles was when WHINSEC's leadership decided to remove the bilingual requirement. Furthermore, the record establishes—and Rosa did not dispute—that WHINSEC's leadership ordered a legal review of the workforce management support specialist position after

13

someone complained of favoritism toward Rosa.  The investigation confirmed a perception of favoritism toward Rosa.  It also uncovered another important concern: the bilingual requirement was not a legitimate requirement of the workforce management support specialist position.[2]

After reviewing the skills necessary for the position and learning that the WHINSEC's human resources director could not present an adequate justification for the bilingual language requirement, the Army determined that the bilingual requirement was unnecessary and removed it.  Removing the unnecessary language requirement did not discriminate against anyone because of race, color, or national origin.  Rather, it removed what the Army concluded was an illegitimate barrier that prevented otherwise qualified candidates from being considered for the workforce management support specialist job.  Had the Army kept the bilingual requirement after concluding it was not a legitimate requirement of the position, such a decision could have placed the Army at risk of complaints that the Army was discriminating against individuals whose national origin was not a Spanish-speaking country.  In summary, Rosa has not pointed to

---

[2] The Court understands that Rosa subjectively believes that the position requires the employee to speak Spanish twenty-five percent of the time because someone in WHINSEC's HR department must talk to Spanish-speaking partner nation instructors during in-processing. Fact-Finding Conference Tr. 58:2-11.  But Rosa did not point to evidence that this task is one of the *workforce management support specialist's* central work duties.

any evidence that the removal of the bilingual requirement gives rise to an inference of discrimination.

Rosa also hints that Battles was less qualified than she was.  But the only qualification Rosa asserts that Battles lacked was the ability to speak Spanish.  And, as discussed above, the ability to speak Spanish was not a legitimate requirement of the workforce management support specialist position.  Rosa did not demonstrate that her race, color, or national origin was the but-for cause of any differential treatment.  She offered no direct evidence that these factors played a role in the Army's decision to select Battles instead of Rosa for the workforce management support specialist job.  The Court recognizes that differential treatment might be inferred if Rosa was more qualified than Battles.  But Rosa did not argue, much less present evidence, that she was more qualified than Battles (except that she could speak Spanish and Battles could not).  The selection panel noted that Battles had more than ten years of experience as an HR professional, that she had in-depth knowledge of all the required systems and upcoming changes, that she had relationships with Army organizations outside of WHINSEC that would be beneficial to WHINSEC, that she could be a catalyst of positive change in the HR department, and that she displayed an ability to handle stress well.  In contrast, the selection panel noted that while

Rosa knew the HR systems and understood WHINSEC's operations, she lacked the confidence and initiative to make improvements to WHINSEC's HR department.   Thus, based on the record citations presented by the parties, the evidence does not give rise to an inference of differential treatment based on a protected characteristic.

Again, Rosa "need not have shown that being white," Hispanic, and Chilean "was the but-for cause" of the Army's decision to promote a non-white, non-Hispanic, non-Chilean candidate instead of her. *Malone*, 858 F. App'x at 301.  But she "does still need to show that the decision was in some way tainted by race [or color or national origin] discrimination." *Id.*  Rosa did not point to any evidence that her application for the workforce management support specialist position was treated differently because of her race, color, or national origin. Accordingly, the Army is entitled to summary judgment on Rosa's failure-to-promote claim.

CONCLUSION

For the reasons set forth above, the Army's summary judgment motion (ECF No. 31) is granted.

IT IS SO ORDERED, this 18th day of May, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

16